Anthony DUCALLY

v.

STATE of Rhode Island.

No. 2001–442–M.P.

Supreme Court of Rhode Island.

Nov. 8, 2002.

Terence E. Livingston, Providence, for Plaintiff.

Aaron L. Weisman, Providence, for Defendant.

Present: WILLIAMS, C.J., LEDERBERG, FLANDERS, GOLDBERG, JJ., and WEISBERGER, C.J. (Ret.).

## OPINION

PER CURIAM.

This case came before the Court for oral argument on September 24, 2002, pursuant to an order that had directed both parties to appear in order to show cause why the issues raised on this petition for certiorari should not be summarily decided. After considering the arguments of counsel and the memoranda filed by the parties, we are of the opinion that cause has not been shown, and shall proceed to decide the case at this time.

In this petition for certiorari, the state seeks review of a Superior Court order vacating two separate pleas of *nolo contendere* by defendant, Anthony Ducally (defendant).

On October 21, 1997, defendant pled *nolo contendere* to charges of possessing a controlled substance and of possessing marijuana. He was sentenced to serve eighteen months in prison and one year in prison, respectively. Both terms of imprisonment were suspended with probation. Thereafter, on October 20, 1998, defendant pled *nolo contendere* to charges of assault with a dangerous weapon, conspir-

acy to commit assault with a dangerous weapon and possession of a pistol without a license. He was sentenced to serve concurrent terms of ten years in prison on the assault charges and five years in prison on the possession charge. Again, the sentences were suspended with probation.

Meanwhile, as a result of the convictions, the United States Attorney General instituted deportation proceedings against defendant pursuant to the Immigration and Naturalization Act, 8 U.S.C. § 1182. Almost three years after the first plea was entered, and almost two years after the second plea was entered, defendant filed a *pro se* motion seeking to vacate the pleas by way of postconviction relief.[1]

As grounds, therefore, he asserted that he had received ineffective assistance of counsel when he entered his *nolo contendere* pleas because he was not informed that said pleas could result in his deportation from the United States. He then maintained that he should be permitted to withdraw those pleas and proceed to trial on the various charges. The state objected. It filed alternative motions to dismiss and for summary judgment, contending that because deportation is a collateral consequence of a plea, there was no duty to advise defendant of its possibility.

After hearing the arguments of counsel, the hearing justice denied the state's motions; instead, he vacated defendant's pleas of *nolo contendere*. The state then filed this petition for certiorari, seeking reinstatement of the vacated *nolo contendere* pleas that previously had been entered by defendant. The state contends that *State v. Desir,* 766 A.2d 374 (R.I.2001) is controlling and that the hearing justice erred in vacating the pleas. We agree.

---

1. The defendant subsequently obtained the representation of counsel.

■ "Our review on a writ of certiorari is restricted to an examination of the record to determine whether any competent evidence supports the decision and whether the decision maker made any errors of law in that ruling * * * [and whether the decision was] 'patently "arbitrary, discriminatory, or unfair." ' " *Asadoorian v. Warwick School Committee*, 691 A.2d 573, 577 (R.I.1997) (quoting *D'Ambra v. North Providence School Committee*, 601 A.2d 1370, 1374–75 (R.I.1992)).

■ We have held that "[t]he possibility of deportation is only a collateral consequence [of a plea] because that sanction is controlled by an agency which operates beyond the direct authority of the trial [justice]." *Desir*, 766 A.2d at 376 (quoting *State v. Alejo*, 655 A.2d 692, 692 (R.I.1995) and *State v. Figueroa*, 639 A.2d 495, 499 (R.I.1994)). When defendant in this case entered his *nolo contendere* pleas in 1997 and 1998, the "direct consequences of a plea of *nolo contendere* or guilty [were] the only consequences that need[ed] to be addressed with the defendant upon acceptance of a plea of not guilty or *nolo contendere*." *Desir*, 766 A.2d at 376 (citing *State v. Alejo*, 655 A.2d 692 (R.I.1995) and *State v. Figueroa*, 639 A.2d 495 (R.I.1994)). At that time, G.L.1956 § 12–12–22, as enacted

by P.L.1984, ch. 123, § 1, merely provided that:

"[a]t the time of criminal arraignment in the district or superior court, each defendant shall be informed that if he or she is an alien in the United States, a plea of guilty or nolo contendere may affect his or her immigration status. *Failure to so inform the defendant shall not invalidate any action subsequently taken by the court.*" (Emphasis added). Since then, § 12–12–22 [2] has been amended; however, said amendment did not become effective until July, 2000, almost three years after defendant's first *nolo contendere* plea, and almost two years after his second plea.

■ We have consistently held that "statutes *and their amendments* are applied prospectively." *Wilkinson v. State Crime Laboratory Commission*, 788 A.2d 1129, 1140 (R.I.2002) (quoting *Lawrence v. Anheuser—Busch, Inc.*, 523 A.2d 864, 869 (R.I.1987)). "Only when 'it appears by clear, strong language or by necessary implication that the Legislature intended' a statute to have retroactive application will the courts apply it retrospectively." *Wilkinson*, 788 A.2d at 1141 (quoting *Hydro-Manufacturing, Inc. v. Kayser–Roth Corp.*, 640 A.2d 950, 954–55 (R.I.1994)). No such language is contained in the

2. General Laws 1956 § 12–12–22 now provides in pertinent part:

"(a) At the time of criminal arraignment in the district or superior court, each defendant shall be informed that if he or she is an alien in the United States, a plea of guilty or nolo contendere may affect his or her immigration status. Failure to so inform the defendant at the arraignment does not invalidate any action subsequently taken by the court.

"(b) Prior to accepting a plea of guilty or nolo contendere in the district or superior court, the court shall inform the defendant that if he or she is not a citizen of the United States, a plea of guilty or nolo contendere may have immigration conse-

quences, including deportation, exclusion of admission to the United States, or denial of naturalization pursuant to the laws of the United States. Upon request, the court shall allow the defendant additional time to consider the appropriateness of the plea in light of this advisement.

"(c) If the court fails to so inform the defendant as required by this section, and the defendant later shows that his plea and conviction may have immigration consequences, the defendant is entitled, upon a proper petition for post-conviction relief, to have the plea vacated. Absent a record that the court provided the advisement required by this section, the defendant is presumed to not have received the advisement."

amendment to § 12–12–22. Indeed, the public laws that enacted the amendment specifically provide that the act takes effect upon passage (July 20, 2000) and will expire on January 15, 2003. *See* P.L.2000, ch. 500, § 2 and P.L.2000, ch. 501, § 2.[3] Clearly, the Legislature did not intend the amendment to apply retroactively to affect the pleas entered by the defendant in this case. *See Desir*, 766 A.2d at 376 n. 1. It is noteworthy that in the federal courts, new rules, even of a constitutional dimension, will not be applied to applications for postconviction relief once the conviction is final. *See Teague v. Lane*, 489 U.S. 288, 306, 109 S.Ct. 1060, 1073, 103 L.Ed.2d 334, 353 (1989).

The defendant contends that in the interests of fairness and justice, we should follow *In re Matthew A*, 743 A.2d 553 (R.I.2000), wherein we upheld a Family Court decision to vacate a juvenile's admission to four counts of second-degree molestation and to one count of malicious damage. In that case, the juvenile had not been advised, nor was it a requirement that he be advised, that he would have to register as a sexual offender as a result of his admission. Such advice became a requirement on the plea form only after he entered his plea. However, because that unique case involved a juvenile, we upheld the decision to vacate his plea. Such decision is confined only to juvenile cases and does not upset our long line of cases involving adult offenders. *See State v. Desir*, 766 A.2d 374 (R.I.2001); *State v. Alejo*, 655 A.2d 692 (R.I.1995); and *State v. Figueroa*, 639 A.2d 495 (R.I.1994). It should also be noted that registration as a sexual offender is commanded by the same sovereignty from which the Family Court derives its authority. In respect to the issue of deportation, decisions are made by federal officials who serve a separate sovereignty.

■ "A defendant who pleads guilty on the advice of counsel must demonstrate *at his postconviction hearing* that [the] advice was not within the range of competence demanded of attorneys in criminal cases." *Desir*, 766 A.2d at 375 (quoting *State v. Dufresne*, 436 A.2d 720, 723 (R.I. 1981)). The defendant's burden to prove that he or she did not waive his or her rights in an intelligent and understandable manner is by a preponderance of the evidence. *See State v. Eason*, 786 A.2d 365, 367 (R.I.2001). Additionally, "we will not place the onus upon the trial justice to explore every possible consequence of a plea in order for the plea to be voluntary." *Desir*, 766 A.2d at 377.

Our review of the record reveals that defendant's rights were clearly explained to him both by his attorney and by the trial justice before he entered his pleas of *nolo contendere*. He indicated that he fully understood both his rights and the consequences of his pleas, including the fact he couldn't later "change his mind."

■ In respect to the competence of the defendant's counsel, we should bear in mind that the defendant was faced with five serious offenses that would have aggregated many years of potential imprisonment had he been found guilty after trial. In the course of his *nolo* pleas, he admitted the facts underlying these offenses. In regard to the assault charges, numerous witnesses were prepared to testify against him. It is notable that he received no jail time for any of these of-

3. Two substantially identical statutes were enacted as P.L.2000, chapters 500 and 501. Chapter 500 required the Attorney General to report to the General Assembly annually in regard to the number of pleas vacated, pursuant to the statute. This is the only difference between the two.

fenses, although he was given concurrent terms of ten years imprisonment on the assault charges, and five years imprisonment on the possession charge, all suspended. Indeed it is very unlikely that he informed his attorney of his alien status, since the defendant himself was unaware of it.[4] His attorney obtained a very favorable result in light of the charges and the almost certainty that he would be convicted if he went to trial. Certainly the attorney met the standard of competence required by *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Consequently, we conclude that the defendant knowingly and voluntarily made his pleas and that the trial justice erred in vacating the same.

For the foregoing reasons, the state's petition for certiorari is granted and the order vacating the pleas is quashed. The papers in the case are remanded to the Superior Court with our decision endorsed thereon.

---

**4.** The defendant testified at the postconviction relief hearing that: "I didn't even know I wasn't a citizen. I didn't know because I been [*sic*] here almost all my life." It was only when he received a letter from the Immigration and Naturalization Service in 1999 that he became aware of his alien status.