**Supreme Court**

No. 2011-52-C.A.
(P2/03-773A)

State                          :

        v.                     :

Eileen Morrice.                :

NOTICE:   This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                                    :

v.                                    :

Eileen Morrice.                            :

Present: Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**  The defendant, Eileen Morrice, appeals from the

denial of her motion to seal records pursuant to G.L. 1956 § 12-19-19(c) and G.L. 1956 § 12-1-

12.  Specifically, the defendant asserts that the trial justice erred: (1) in finding that the plain and

ordinary meaning of the statute did not entitle the defendant to relief; by refusing to apply § 12-

19-19(c) retroactively; (2) in finding that the amended provision violates the separation-of-

powers doctrine; and (3) in declining to sever the "shall be exonerated" portion of the statute

from the "shall be sealed" provision.  In a companion case decided by this Court today, we held

that the amendments to § 12-19-19 enacted by the General Assembly in 2010 (P.L. 2010, ch.

128, § 1 and ch. 256, § 1) do not have retroactive application. See State v. Briggs, No. 2011-47-

C.A. (R.I., filed Jan. 11, 2013) (Briggs II).  For similar reasons set forth in this opinion, we

affirm the judgment of the Superior Court.

**I**

**Facts and Procedural History**

The record seemingly indicates that Ms. Morrice is a quintessential candidate for a

deferred sentence and the subsequent sealing of records.  In the spring of 2003, she was charged

- 1 -

with one count of obtaining money under false pretenses over $500. The complaint alleged that she obtained $7,837 by submitting unemployment insurance certification forms containing false information.[1] She accepted responsibility for the crime by entering a plea of nolo contendere to the single count on April 14, 2003 and by agreeing to pay restitution in installments of $130 per month. In light of her plea, her sentencing was deferred for a period of five years. In addition, there is no dispute that defendant faithfully complied with all the terms and conditions of her deferred sentence or that she paid off her restitution seven months early. However, her hope for the immediate expungement or sealing of her records, or both, was frustrated when this Court clarified the law in 2007.

In State v. Briggs, 934 A.2d 811, 815-16 (R.I. 2007) (Briggs I), this Court held that the Superior Court does not have inherent authority to grant expungement upon the completion of a deferred sentence; rather, a defendant must satisfy the requirements for statutory expungement under G.L. 1956 § 12-1.3-2.[2] The Court further held that, for purposes of expungement, nolo contendere pleas followed by deferred sentences constitute convictions. Briggs I, 934 A.2d at 816. Under § 12-1.3-2(b), a first offender may file a motion for expungement five years after the completion of his or her sentence (if a misdemeanor) or ten years after the completion of sentence (if a felony).

---

[1] In a decision issued on November 12, 2010, the hearing justice stated that "[d]efendant entered a plea of nolo contendere to one count of conspiracy to violate the Controlled Substances Act and two counts of obtaining a controlled substance by fraud." This would appear to be an error. The criminal complaint refers only to the charge of obtaining money under false pretenses, and nothing in the record indicates any other charge.

[2] General Laws 1956 § 12-1.3-2(a) states:
> "Any person who is a first offender may file a motion for the expungement of all records and records of conviction for a felony or misdemeanor by filing a motion in the court in which the conviction took place, provided that no person who has been convicted of a crime of violence shall have his or her records and records of conviction expunged."

- 2 -

In 2010, the General Assembly amended § 12-19-19[3] (the deferred-sentence statute) to include, inter alia, a new subsection (c), which states:

> "If a person, after the completion of the five (5) year deferment period is determined by the court to have complied with all of the terms and conditions of the written deferral agreement, then the person shall be exonerated of the charges for which sentence was deferred and records relating to the criminal complaint, information or indictment shall be sealed pursuant to the provision of § 12-1-12. Further, if any record of the criminal complaint, information or indictment has been entered into a docket or alphabetical index, whether in writing or electronic information storage or other data compilation system, all references to the identity of the person charged by the complaint shall be sealed." Section 12-19-19, as amended by P.L. 2010, ch. 128, § 1 and ch. 256, § 1.

Section 2 of P.L. 2010, chs. 128 and 256 provides that the act "shall take effect upon passage."

---

[3] General Laws 1956 § 12-19-19 (a) and (b) provide:

> "(a) Whenever any person is arraigned before the superior court and pleads guilty or nolo contendere, he or she may be at any time sentenced by the court; provided, that if at any time the court formally defers sentencing then the person and the attorney general shall enter into a written deferral agreement to be filed with the clerk of the court. When a court formally defers sentence, the court may only impose sentence within five (5) years from and after the date of the written deferral agreement, unless during the five (5) year period, the person shall be declared to have violated the terms and conditions of the deferment pursuant to subsection (b) of this section in which event the court may impose sentence.
>
> "(b) It shall be an express condition of any deferment of sentence in accordance with this section that the person agreeing to said deferment of sentence shall at all times during the period of deferment keep the peace and be of good behavior. A violation of this express condition or any other condition set forth by either the court or the written deferral agreement shall violate the terms and conditions of the deferment of sentence and the court may impose sentence. The determination of whether a violation has occurred shall be made by the court in accordance with procedures relating to violation of probation §§ 12-19-2 and 12-19-14."

In August 2010, Morrice filed a motion to seal under § 12-19-19(c). Although defendant's motion was entitled "[m]otion to [e]xpunge and [s]eal," her memorandum in support of the motion made clear that she sought only to have her records sealed.[4]

The defendant argued that under the plain and ordinary language of the newly amended statute, she was eligible to have her records sealed; thus there was no issue of retroactivity. The defendant maintained that if the court found that retroactivity was an issue, as a remedial statute § 12-19-19 was entitled to retroactive application, and further, that to hold otherwise would lead to an absurd result. Finally, defendant argued that because of her lack of criminal history and her rehabilitation through the successful completion of her deferment, she was entitled to have her records sealed and that equity required no less. The state argued that the amended statute should not be applied retroactively without clear language indicating such a legislative intent, and that, if applied retroactively, the statute would "constitute an impermissible exercise of judicial power by the Legislature" and thereby would violate the separation-of-powers doctrine.

The defendant's motion was heard on November 5, 2010, along with similar motions filed by a number of persons who also had successfully completed deferred sentences. The hearing justice issued a written "main decision" in one case (State v. Warzycha, 2010 WL 4682605 (R.I. Super. Nov. 12, 2010)), which was incorporated by reference in the decisions in the remaining individual cases. The court denied all of the motions, finding that § 12-19-19 "does not include any clear, strong language indicating an intent that it is to be applied retroactively nor does it apply retroactively by necessary implication." The hearing justice also

---

[4] Although defendant's brief states clearly that she neither moved for, nor is she seeking, the remedy of exoneration, at oral argument, defendant stated that she was seeking both exoneration and sealing. Because defendant admits that she did not move for exoneration, we deem that argument waived.

concluded that the statute created a substantive right, and that its retroactive application would violate the doctrine of separation of powers. On November 29, 2010, defendant filed this appeal.

## II

## Standard of Review

We review questions of statutory construction and interpretation <u>de</u> <u>novo</u>, and "[w]hen the language of the statute is clear and unambiguous, it is our responsibility to give the words of the enactment their plain and ordinary meaning." <u>Mendes v. Factor</u>, 41 A.3d 994, 1002 (R.I. 2012) (quoting <u>Generation Realty, LLC v. Catanzaro</u>, 21 A.3d 253, 259 (R.I. 2011)). In undertaking this responsibility, we are mindful that "[i]t is generally presumed that the General Assembly 'intended every word of a statute to have a useful purpose and to have some force and effect.'" <u>Curtis v. State</u>, 996 A.2d 601, 604 (R.I. 2010) (quoting <u>LaPlante v. Honda North America, Inc.</u>, 697 A.2d 625, 629 (R.I. 1997)). This Court repeatedly has held that "statutes will be given prospective application unless otherwise provided." <u>In re Alicia S.</u>, 763 A.2d 643, 646 (R.I. 2000). Importantly, "[o]nly when the Legislature, by express language or necessary implication, manifests its intent that a statute be given retroactive effect, will the courts apply it retrospectively." <u>Id.</u> at 646-47. Further, "we must 'consider the entire statute as a whole; individual sections must be considered in the context of the entire statutory scheme, not as if each section were independent of all other sections.'" <u>Mendes</u>, 41 A.3d at 1002 (quoting <u>Generation Realty, LLC</u>, 21 A.3d at 259). Lastly, "under no circumstances will this Court 'construe a statute to reach an absurd result.'" <u>Id.</u> (quoting <u>Generation Realty, LLC</u>, 21 A.3d at 259).

## III

## Discussion

On appeal, defendant raises three issues. First, defendant argues that the hearing justice erred in finding that the plain and ordinary meaning of the amended statute did not entitle defendant to benefit from it. Further, defendant contends that the hearing justice erred in ruling that the 2010 amendments should not be applied retroactively. Finally, defendant asserts that the hearing justice erred in failing to sever the "exoneration" remedy from the "sealing" remedy, thereby avoiding any separation-of-powers issue.

In reply, the state argues that the hearing justice was correct in finding that the amendments should not be applied retroactively because of the absence of clear language or any necessary implication requiring retroactivity, and because the amendments create new substantive rights. Further, the state argues that retroactive application of the 2010 amendments would violate the separation-of-powers doctrine, and that the exoneration remedy is not severable from the sealing remedy as the statute now is written.

## A

## Retroactivity

## 1

## Plain and Ordinary Meaning

The defendant argues that the language of § 12-19-19 is "crystal clear and entirely unambiguous" and that it requires the court to seal the records of those defendants who, like Ms. Morrice, have completed their deferred sentence period, regardless of when that deferred sentence agreement was executed. She further argues that the 2010 amendments did not change the conditions of deferred sentences; rather, they merely require the Superior Court to seal the

records of a person once it has determined that the person has successfully completed his or her deferred sentence. Thus, she contends, the plain and ordinary meaning of § 12-19-19(c) commands the Superior Court to consider her compliance with the terms of her deferred sentence and, if it finds that she did comply, then to seal her records.

This Court consistently has held that "'statutes and their amendments are applied prospectively,' absent 'clear, strong language, or by necessary implication that the Legislature intended a statute to have retroactive application * * *.'" Rodrigues v. State, 985 A.2d 311, 318 (R.I. 2009) (quoting Ducally v. State, 809 A.2d 472, 474 (R.I. 2002)).

Based upon our de novo review of § 12-19-19, as amended in 2010, we find no "clear, strong language" directing that the remedies of exoneration and sealing be applied to deferred sentences entered into prior to the effective date of the amendments.

Arguably, the 2010 amendments to § 12-19-19 did not radically alter the then-existing practice concerning the deferment of sentences. Nevertheless, the amendments create a more formalized process. The General Assembly added two new subsections to § 12-19-19. Subsection (b) of § 12-19-19 expressly conditions any deferment of sentence upon the defendant's agreement to keep the peace and be of good behavior and clarifies that the court may impose sentence upon the defendant's violation of any of the terms and conditions of the deferment, such violation to be determined "in accordance with procedures relating to violation of probation §§ 12-19-2 and 12-19-14."

Section 12-19-19(c) provides for the exoneration of the charges and the sealing of the records upon successful compliance with all the terms and conditions of the "written deferral agreement." We note that the 2010 amendments revised the term "written agreement" to "written deferral agreement." Although this change seemingly is minor and technical in nature,

the fact that the remedies of exoneration and sealing are specifically contingent upon compliance with the "written deferral agreement" suggests that such remedies apply only to deferred sentences imposed after the date of amendment. We reject, therefore, defendant's contention that the plain language of the amended statute compels the sealing of her records—and presumably the records of all others who have complied with the terms and conditions of agreements entered into before the 2010 amendments were enacted.

Nor do we discern a need for retrospective application of § 12-19-19(c) by necessary implication. On the contrary, the only temporal mandate given by the General Assembly is § 2 of the enacting legislation, which states, "[t]his act shall take effect upon passage." As this Court has previously held, such language, "[i]n the absence of any express language or implicit indication that the statutory amendment should be applied retroactively," indicates an intent toward prospective application only. In re Alicia S., 763 A.2d at 647. See also Rodrigues, 985 A.2d at 318 (stating that the Court had previously held that a statute did not apply retroactively when the statute provided that it did not take effect until its date of passage). We are satisfied, therefore, that the plain language of § 12-19-19 as amended in 2010 does not necessarily imply that the General Assembly intended for subsection (c) to apply retroactively.

## 2

### Legislative Intent

The defendant argues alternatively that the 2010 amendments evince a legislative intent that they be applied retroactively. To support this argument, defendant first contends that the amendments to § 12-19-19 were enacted in direct response to our holding in Briggs I that the expungement statute was the only available recourse for the expungement of records after the successful completion of a deferred sentence. According to defendant, the amendments were

enacted "to provide an additional avenue of recourse by granting the Superior Court the authority and jurisdiction to seal deferred sentences under * * * § 12-19-19." She also posits that the General Assembly was reacting to a letter from the then-Attorney General Patrick Lynch supporting the proposed amendments. In that letter, Attorney General Lynch wrote that "a deferred sentence is a contractual agreement that the [s]tate and the defendant enter into voluntarily and knowingly." From this assertion, defendant draws the conclusion that "the intent of the legislature was to provide [her] with the benefit of the Attorney General's promise in order to wipe her record clean."

Not surprisingly, the state reads the Attorney General's letter in an entirely different light, interpreting his endorsement of the proposed amendments as a way to make "deferred sentences a more 'palatable' sentencing option going forward." Although it is quite possible that Attorney General Lynch's support of the subject legislation may well have been helpful to its passage, we decline to place any significance on his letter as an indicator of legislative intent. See State v. Santos, 870 A.2d 1029, 1032 (R.I. 2005) ("The plain statutory language is the best indicator of legislative intent.").

The defendant next contends that § 12-19-19 applies retroactively because it is ameliorative and remedial in nature. This assertion requires us to examine whether the statute is substantive in nature, or remedial or procedural. See Direct Action for Rights and Equality v. Gannon, 819 A.2d 651, 658 (R.I. 2003). "Substantive statutes, which create, define, or regulate substantive legal rights, must be applied prospectively. * * * In contrast, remedial and procedural statutes, which do not impair or increase substantive rights but rather prescribe methods for enforcing such rights, may be construed to operate retroactively." Id. (quoting Pion v. Bess Eaton Donuts Flour Co., 637 A.2d 367, 371 (R.I. 1994)).

The hearing justice found that the amended statute expanded "the universe of people who are afforded the right to have their criminal records shielded from the public," and thus created a substantive right that otherwise was not available. We agree. Prior to the 2010 amendments, expungement was not available to individuals who had committed a crime of violence or who were repeat offenders. See § 12-1.3-2. Moreover, § 12-19-19(c) purports to exonerate[5] any person who successfully complies with the terms and conditions of a written deferral agreement "of the charges for which sentence was deferred." Before such amendment was enacted, however, an individual who had been granted an expungement under § 12-1.3-2 nevertheless was required to disclose the conviction in application "for a law enforcement agency position, for admission to the bar of any court * * * for a teaching certificate, * * * or [to be] the operator or employee of an early childhood education facility * * *." Section 12-1.3-4(b). Section 12-19-19(c), by contrast, contains no such limitation about disclosure and seemingly would make exoneration and sealing available to those who are not first-time offenders, as well as to those who have committed a crime of violence. We conclude, therefore, that although the deferred-sentence statute is remedial in nature, see Briggs I, 934 A.2d at 816-17, the addition of subsection (c) to § 12-19-19 was a substantive amendment and not entitled to retroactive application.

**3**

**Absurd Result**

Finally, defendant argues that the statute should be interpreted to apply retroactively because an alternate construction would produce an absurd result. The defendant points to her

---

[5] As the hearing justice noted, "'[e]xonerate' has been defined as to 'clear from accusation or blame: exculpate.'" State v. Warzycha, 2010 WL 4682605 (R.I. Super. Nov. 12, 2010) (quoting Webster's Third New International Dictionary 797 (1961)).

status as a first-time offender and her compliance with the terms of her deferred sentence (including, she states, paying off her restitution seven months early) as reasons why she is "the type of defendant that the [s]tate determined deserves a second chance." The defendant asserts that it would be "illogical" for the General Assembly to have intended the amended statute to apply to those entering deferred sentence agreements after 2010, but not to those who had entered agreements prior to the amendment. The defendant also points to the apparent pre-Briggs I practice of granting immediate expungement to some individuals upon completion of their deferred sentences as further proof that to deny her request to seal would be illogical. Although the state does not disagree that some individuals were in fact granted expungement pre-Briggs I, it correctly points out that given this Court's decision in Briggs I, those individuals might not have been entitled to that relief.

The defendant asserts that if relief is not granted to her under § 12-19-19(c), she will not receive the benefit of the bargain she made when she entered into the deferred-sentence agreement and that she would have "no ability to receive the relief" promised. We reject this argument for two reasons. First, an amendment drafted in 2010 could not serve as the basis of a bargain entered into in 2003, and the relief offered by § 12-19-19(c) is a different remedy (exoneration and sealing) from that available in 2003. Second, defendant may still receive the relief allegedly promised, albeit in 2018 rather than 2012. Accordingly, we do not find that declining to apply § 12-19-19(c) retroactively would reach an absurd result.

## B

### Separation of Powers

Having determined that the statute may not be applied retroactively, this Court need not reach the question of whether retroactive application would violate the doctrine of separation of

powers.  In <u>State v. Warzycha</u>, 2010 WL 4682605, incorporated by reference in the lower court's decision in this case, the hearing justice stated, and we agree, that it is unnecessary at this time to determine whether prospective application would be unconstitutional.  Because no defendant who entered a deferred-sentence agreement subsequent to the enactment of § 12-19-19(c) will yet have completed his or her five-year deferment, this issue is not yet ripe for review.  For these reasons, we will not reach the question of whether the exoneration clause of § 12-19-19(c) is, as the defendant urges, severable from the sealing clause.

**IV**

**Conclusion**

For the reasons set forth in this opinion, we affirm the judgment of the Superior Court. The record of this case shall be remanded to the Superior Court.



**RHODE ISLAND SUPREME COURT CLERK'S OFFICE**

*Clerk's Office Order/Opinion Cover Sheet*

---

**TITLE OF CASE:**    State v. Eileen Morrice.

**CASE NO:**    No. 2011-52-C.A.
(P2/03-773A)

**COURT:**    Supreme Court

**DATE OPINION FILED:**    January 11, 2013

**JUSTICES:**    Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia JJ.

**WRITTEN BY:**    Chief Justice Paul A. Suttell

**SOURCE OF APPEAL:**    Providence County Superior Court

**JUDGE FROM LOWER COURT**:

    Associate Justice Kristin E. Rodgers

**ATTORNEYS ON APPEAL:**

    For State:  Christopher R. Bush
           Department of Attorney General

    For Defendant:  Priya N. Lakhi
           Director & Supervising Attorney
           Criminal Defense Clinic

           Juliana McKittrick
           Rule 9 Student Attorney